UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

Nº 07-CV-2727 (JFB)

———————————

IN RE: MATTHEW SMORTO,

Debtor.

MARC A. PERGAMENT,

Trustee-Appellant,

VERSUS

MATTHEW SMORTO,

Debtor-Appellee.

———————————

MEMORANDUM AND ORDER
March 12, 2008

———————————

JOSEPH F. BIANCO, District Judge:

The instant case is an appeal from the voluntary bankruptcy proceeding of Debtor Matthew Smorto (hereinafter, the "Debtor" or "Smorto"), pursuant to Chapter 7 of the Bankruptcy Code, in the United States Bankruptcy Court for the Eastern District of New York (hereinafter, the "Bankruptcy Court").

Trustee Marc A. Pergament (hereinafter, the "Trustee" or "Pergament") appeals from the April 18, 2007 Memorandum of Decision and Order (hereinafter, the "April 18 Memorandum and Order") of the Honorable Stan Bernstein, United States Bankruptcy Judge, dismissing Trustee's complaint under 11 U.S.C. §§ 727(a)(3) and (4), which sought a denial of Debtor's discharge for having made a false oath with respect to his financial disclosures.[1] The Bankruptcy Court dismissed the complaint, finding that the Trustee has not proven by a preponderance of the evidence that the Debtor knowingly concealed his financial condition or that the Debtor's false statements were made knowingly and with an intent to defraud.

The Trustee now appeals from the April 18 Memorandum and Order on the following grounds: (1) the Bankruptcy Court erred in dismissing the Trustee's complaint under 11 U.S.C. § 727(a)(4); (2) the Bankruptcy Court erred in ruling that the Debtor satisfied his

---

[1] Only the Bankruptcy Court's dismissal under 11 U.S.C. § 727(a)(4) is being contested on appeal.

burden of proving that he did not make the false statements knowingly and with fraudulent intent; and (3) the Bankruptcy Court erred in considering the Debtor's level of sophistication in financial matters in determining that the Debtor did not act with fraudulent intent.

As set forth below, the Court finds the Trustee's arguments on appeal to be unpersuasive and affirms the Bankruptcy Court's April 18, 2007 Memorandum and Order dismissing the Trustee's complaint. Specifically, contrary to the Trustee's suggestion that the Bankruptcy Court wrongfully considered the Debtor's lack of sophistication of financial matters in making such a determination, the Bankruptcy Code does not prohibit such consideration and the Bankruptcy Court clearly was well within its discretion to do so. Moreover, the Bankruptcy Court's determination that the Debtor did not make false statements knowingly and with fraudulent intent was not clearly erroneous. In short, having carefully reviewed the record, the Court concludes that the Bankruptcy Court did not err in dismissing the Trustee's complaint.

I. BACKGROUND

A. The Debtor's Filing of Schedules

On October 12, 2005, the Debtor, represented by counsel, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. (Joint Pre-Trial Stmt. ¶ 1, 5; Designation of Record - Exhibit 1 (hereinafter, "Exh. 1").) The Debtor also filed the accompanying schedules with the petition. (Exh. 1.)

According to the Debtor's Schedule B, the Debtor held personal property in the sum of $35,532.00. (*Id.* at 5-9.) According to the Debtor's Schedule F, creditors held unsecured claims in the sum of $37,664.00. (*Id.* at 13-15.) With respect to income and expenses, the Debtor's Schedule I provided that the Debtor's net monthly available income was $4,610, based on gross wages of $5,062 per month, less deductions of $2,152 per month, plus his wife's gross wages of $1,700 per month. (*Id.* at 2.) The Debtor's Schedule J provided that the Debtor's total monthly expenses were $4,433, including an estimated income tax obligation relating to the Debtor's wife in the sum of $400 per month. (*Id.* at 19.) Finally, in the Debtor's Statement of Financial Affairs, the Debtor stated that his gross income for 2004 was $61,000 and that through the date of the filing of the petition, the Debtor's gross income for 2005 was $49,000. (*Id.* at 20-31.)

B. The Section 341 Meeting

The Trustee was appointed on October 12, 2005. On November 28, 2005, the Trustee conducted an examination of the Debtor under oath pursuant to 11 U.S.C. § 341 (the "341 Meeting"), where Trustee asked the Debtor whether he wanted to make any changes to his petition and schedules. (Joint Pre-Trial Stmt. ¶ 6.) It is undisputed that the Debtor did not make any changes at that time. (*Id.*)

At the 341 Meeting, the Trustee requested that the Debtor produce certain documents, including copies of his tax returns. (Debtor's Ans. to Compl., at 1.) The Debtor produced his federal and state tax returns for 2003, 2004, and 2005.[2] According to these documents, the Debtor's income for 2004 was $63,842. (Exh. 1.) The Debtor also received state tax refunds of $277 for 2003 and $279

---

[2] The amounts of the aforementioned refunds were stipulated in the Joint Pre-Trial Statement and again during the trial testimony. (*See* Joint Pre-Trial Stmt. ¶ 12; Trial Tr. 31:22-32:12.)

2

for 2004 and federal tax refunds of $5,204 and $4,155 for 2003 and 2004, respectively. (*Id.*) In 2005, the Debtor received a state tax refund of $918 and a federal tax refund of $8,161. (*Id.*)

C. The Trustee's Complaint

On May 1, 2006, the Trustee served a Summons and Complaint seeking an order denying the Debtor his discharge pursuant to 11 U.S.C. § 727(a)(4). The Trustee alleged, among other things, that the following fraudulent omissions and misrepresentations were made by the Debtor: (1) the Debtor's Schedules I and J were materially inaccurate, including that (a) "[t]he [Debtor's] Schedule I sets forth that the Debtor's net monthly available income is $4,610.00 and yet his tax returns reflect a higher available combined monthly income"; (b) "[t]he [Debtor's] Schedule J sets forth that the gross monthly income of the Debtor's spouse is $1,700.00 per month and that is not reflected in [Debtor's documents]"; (c) "[t]he [Debtor's] Schedule J identifies expenses that are not consistent with the documents provided by [the Debtor]"; and (d) "[t]he [Debtor's] Schedules as to income and expenses are divergent from his documentation and tax returns";[3] and (2) the Debtor's Statement of Financial Affairs was materially inaccurate, because (a) it "does not accurately reflect the Debtor's income for 2004 and 2005 and fails to disclose the income for 2003"; and (b) it "fails to reflect the tax refunds of $4,434.00 collected by the Debtor in the 2004 [sic] nor the tax refunds of $5,431.00 collected in 2003."[4] (Compl., at 3-4.)

D. Filing of Amended Schedules

On May 18, 2006, the Debtor served an Answer to the Complaint. (Debtor's Ans. to Compl.) On August 2, 2006, the Debtor filed Amended Schedules I and J. (Designation of Record - Exhibit 13 (hereinafter, "Exh. 13").) In Amended Schedule I, the Debtor increased his currently monthly gross wages to $5,262 and reduced his wife's monthly gross wages to $1,580. (*Id.*, at 2.) In Amended Schedule J, the Debtor increased his monthly expenses by $300 relating to his wife's estimated credit card expense. (*Id.* at 3.) The Debtor never amended his Schedule B or his Statement of Financial Affairs.

E. The Bankruptcy Court Decision

On October 10, 2006, the Trustee's claim under Section 727(a)(4) was tried before the Bankruptcy Court. The only witness called by the Trustee was the Debtor. By Memorandum and Order, dated April 18, 2007, the Bankruptcy Court dismissed the complaint. With respect to the inaccuracies in the schedules and the Statement of Financial Affairs, the Bankruptcy Court concluded that

---

[3] In particular, the Trustee alleges that "the Debtor's Schedules I and J were materially inaccurate, including: (a) the failure to reflect the tax refunds of $4,434.00 collected by the Debtor in 2004; (b) the failure to reflect the tax refunds of $5,431.00 collected in 2003; and (c) the characterization of the Debtor's wife monthly income for 2005 as 'gross wages' when, in fact, this figure was net of expenses, including the Debtor's wife's 'estimated' tax payments of $400.00 per month." (Trustee's Br., at 4.)

[4] In addition, the Trustee alleges that "the Debtor's Schedule B was materially inaccurate due to the Debtor's failure to disclose his anticipated tax refund for 2005 of $9,079.00, despite the requirement in Schedule B to set forth, *inter alia,* '[o]ther contingent and unliquidated claims of every nature, including tax refunds.'" (Trustee's Br., at 5.)

3

the Debtor did not make such statements with fraudulent intent:

> The debtor testified that the information he provided in his schedules and Statement of Financial Affairs was accurate to the best of his knowledge and honest belief and the debtor's testimony in this regard is not lacking in credibility. The debtor testified that based on his yearly base salary, he estimated what he honestly believed to be his net and gross income. Moreover, as found earlier, the debtor is neither a savvy nor sophisticated businessman and lacks experience or training in accounting-related matters. There is nothing in the debtor's testimony or the evidence submitted in this case to establish that the inconsistencies noted by the trustee are anything more than carelessness or inadvertent mistakes made by a debtor who is unsophisticated in financial matters. Fraudulent intent cannot be established on this basis . . . . Inasmuch as this Court is satisfied that the debtor made an honest attempt to account for his financial status in his schedules and Statement of Financial Affairs to the best of his ability, the trustee has not established fraudulent intent on the part of the debtor on this ground.

(April 18 Memorandum and Order, at 11-12) (citation omitted.)

Similarly, with respect to the Debtor's failure to include the income tax refunds for 2003 and 2004 in his Schedules, the Court also concluded that the Debtor lacked fraudulent intent:

> The debtor also argues that he did not include the income tax refunds he received in 2003 and 2004 in his income because he honestly believes that tax refunds do not constitute "income." In support of this argument, the debtor alleges that the tax refunds were already accounted for in his gross income and there is no place delineated on the Schedules or Statement of Affairs to reflect tax refunds that were received by the debtor prior to the filing of his bankruptcy petition. The debtor's argument on this ground is not unfounded. The debtor's gross income takes into account any taxes that must be paid, and thereby any taxes that may be refunded. To count these taxes again would be overstating the debtor's income. Moreover, while it is certainly the case that any tax refunds due after the petition is filed are property of the estate, this refund was received before the petition was filed. The only way to account for it would be if it was not spent and therefore constituted personal property of the estate. This does not appear to be the case.

(*Id.* at 12.)

Therefore, based on the evidence, the Bankruptcy Court concluded "that the debtor's false statements are neither knowing nor fraudulent" and that "the trustee [had] not met his burden of establishing the debtor knowingly and fraudulently made a false oath." (*Id.* at 12-13.)

4

F.  The Instant Appeal

On July 5, 2007, the Trustee filed an appeal before this Court with respect to the April 18 Memorandum and Order dismissing the complaint by which the Trustee requested the entry of an order and judgment, *inter alia*, denying the Debtor his discharge. On July 20, 2007, the Trustee filed his brief. On August 2, 2007, the Debtor filed his opposition. On August 8, 2007, the Trustee filed his reply. The Court has fully considered the submissions of the parties.

II. STANDARD OF REVIEW

Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that a reviewing court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," or it may remand with instructions for further proceedings. *See* Fed. R. Bankr. P. 8013.

The Court will review the Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error. *See In re Hyman*, No. 05-7026-BK, 2007 WL 2492789, at *3 (2d Cir. Sept. 6, 2007); *see also Lubow Mach. Co. v. Bayshore Wire Prods. (In re Bayshore Wire Prods.)*, 209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy Court's findings of fact for clear error, . . . its conclusions of law *de novo*, . . . its decision to award costs, attorney's fees, and damages for abuse of discretion."); *accord In re Ionosphere Clubs,* 922 F.2d 984, 988-89 (2d Cir. 1990). "The question of a debtor's knowledge and intent under §727(a)(4) is a matter of fact . . ." *Cepelak v. Sears (In re Sears)*, 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000) (internal citations omitted); *Weiss v. Winkler*, No. 98-CV-5742 FB, 2001 WL 423050, at *3 (E.D.N.Y. Mar. 30, 2001).

III. THE LEGAL FRAMEWORK UNDER SECTION 727(A)4(A)

Section 727(a)(4)(A) provides the following:

(a) The court shall grant a debtor a discharge, unless --
(4) the debtor knowingly and fraudulently, in or in connection with the case --
(A) made a false oath or account.

11 U.S.C. § 727(a)(4)(A). A debtor's bankruptcy petition and the accompanying schedules constitute statements under oath for purposes of this Section. *See, e.g., Nof v. Gannon (In re Gannon)*, 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994). The Second Circuit has made clear that a denial of discharge pursuant to § 727 is a severe sanction and must be construed strictly in favor of the debtor. *See State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996) (citation omitted).

Therefore, it is well established that to prove an objection to discharge under § 727(a)(4)(A), the party objecting to discharge must establish by a preponderance of the evidence that: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive, and (5) the statement related materially to the bankruptcy case." *Dubrowsky v. Estate of Perlbinder (In re Dubrowsky)*, 244 B.R. 560, 572 (E.D.N.Y. 2000) (citations omitted). Once the moving party meets its initial burden to produce evidence of a false statement, the burden of production shifts to the debtor to produce a "credible explanation." *Casa Invs. Co. v. Brenes (In re Brenes)*, 261 B.R. 322, 334

5

(Bankr. D. Conn. 2001). However, the overall burden of proof remains with the moving party. *See., e.g., BTE Concrete Formwork, LLC v. Arbaney (In re Arbaney),* 345 B.R. 293, 301 (Bankr. D. Colo. 2006).

## IV. CONSIDERATION OF THE DEBTOR'S LACK OF SOPHISTICATION

As a threshold matter, the Trustee argues that the Bankruptcy Court erred in considering the Debtor's lack of financial sophistication in determining whether the Debtor acted with fraudulent intent. In particular, in concluding that the Debtor lacked fraudulent intent, the Bankruptcy Court noted, among other things, that "as found earlier, the debtor is neither a savvy nor sophisticated businessman and lacks experience or training in accounting-related matters." (April 18, 2007 Memorandum and Order, at 11.)[5]

In arguing that reliance on this factor was erroneous, the Trustee relies heavily on *In re Murray*, 249 B.R. 223, 232-33 (E.D.N.Y. 2000), for the proposition that debtors who are not professionals or business owners are given a more lenient standard of truthfulness and accuracy under § 727(a)(4)(A). (*See* Trustee's Br., at 12.) ("Under *Murray*, the Bankruptcy Court had no basis to take into account the Debtor's perceived lack of financial sophistication in determining whether the Debtor's false statements provided a basis to deny a discharge. . . .") The Court analyzes this legal issue under a standard of *de novo* review and, for the reasons set forth, finds that the Bankruptcy Court did not err.

In determining whether a debtor made a false statement with intent to deceive, the Bankruptcy Court is clearly permitted to consider, among other factors, the financial sophistication, or lack thereof, of the debtor. In other words, while the level of financial sophistication of the debtor is not necessarily a dispositive factor on the issue of intent, it certainly may, in conjunction with other testimony or evidence, tend to support or negate the existence of fraudulent intent. *See, e.g., Montey Corp. v. Maletta (In re Maletta)*, 159 B.R. 108, 114 (Bankr. D. Conn. 1993) ("Courts may consider the debtor's education, business experience, and reliance on counsel when evaluating the debtor's knowledge of a false statement, but the debtor is not exonerated by pleading that he or she relied on patently improper advice of counsel."). Although the Trustee suggests that this is an impermissible consideration, there is absolutely no support in the statutory language of Section 727(a)(4), nor in the case authority, for the proposition that the Court is

---

[5] Earlier in the Memorandum and Order, as to the claim under Section 727(a)(3), the Bankruptcy Court had explained: "The Court finds that the debtor is neither a savvy nor sophisticated businessman and lacks experience or training in accounting-related matters. Rather, the debtor's testimony demonstrates that he has worked as a court officer for over twenty years and the extent of his education is the equivalent of a high school diploma. Indeed, Officer Smorto's highest level of formal education is high school. According to his testimony at trial, his basic training which he received eighteen years ago to qualify for employment as a court officer consisted of a two-week instructional program. Since that early training, he has attended various in-service education courses from time to time on matters of court procedures and court security. His testimony established that he [sic] virtually no sophistication in financial affairs. He clearly was not capable on his own of correctly construing many of the formal and technical requirements embedded in the schedules and statement of financial affairs." (April 18, 2007 Memorandum and Order, at 8-9.)

prohibited from taking into account the defendant's business sophistication as one of a variety of factors when assessing the intent of a debtor. In fact, courts have considered that factor in the context of Section 727(a)(4)(A), as well as other contexts, in determining whether a debtor had intent to defraud. *See, e.g., Johnson v. Greene (In re Greene),* 340 B.R. 93, 100 (Bankr. M.D. Fla. 2006) ("The Court finds that Defendant's lack of records documenting his employment and income from 2004 are the result of his lack of sophistication and business experience and do not warrant a denial of his discharge. Finally, the court finds that the omissions and misrepresentation on Defendant's bankruptcy schedules are attributable to inadvertence, oversight, and a lack of sophistication rather than to fraudulent intent."); *IBA, Inc. v. Hoyt (In re Hoyt),* 337 B.R. 463, 468 (W.D.N.Y. 2006) (referencing that debtor was a "sophisticated businessman" in finding fraudulent intent and denying debtor's discharge); *Weiss*, 2001 WL 423050, at *4 ("These repeated material omissions, made by a sophisticated businessperson, represent a pattern . . . to support the conclusion that Weiss acted with fraudulent intent."); *see also Kovacs v. Hanson (In re Hanson),* 373 B.R. 522, 527 (Bankr. N.D. Ohio 2007) (considering debtor's lack of sophistication pertaining to bankruptcy law in finding lack of any intent to defraud); *Citibank (S.D.), N.A. v. Spradley (In re Johnson),* 313 B.R. 119, 129-30 (Bankr. E.D.N.Y. 2004) (holding that "[t]he financial sophistication of the debtor" is one factor that a court can consider in determining whether the debtor intended to repay debt at the time credit charges or cash advances were incurred) (citation omitted); *Citibank (South Dakota), N.A. v. Olwan (In re Olwan),* 312 B.R. 476, 485 (Bankr. E.D.N.Y. 2004) (same).

Moreover, the Trustee's reliance on *Murray* is entirely misplaced. In *Murray,* the court did not conclude that financial sophistication is an impermissible consideration on the issue of the debtor's intent. Instead, the Court simply found that, *once it has been proven that the debtor intentionally lied*, then a lack of financial sophistication is not a defense to an intentionally false statement. In particular, the Court explained:

> Neither the bankruptcy court nor appellee cited any authority to support this proposition, and this Court's own research has not uncovered any legal basis to make this distinction between sophisticated and unsophisticated debtors. Murray was found to have intentionally lied, both in his schedules and at the trial in the adversary proceeding. This conduct cannot be excused, no matter whether debtor was a business-owning or professionally-employed perjurer or simply a working class perjurer.

*In re Murray,* 249 B.R. at 232-33. The *Murray* analysis is inapposite here because the Bankruptcy Court did not erroneously utilize a lack of financial sophistication to excuse the Debtor for intentionally lying; rather, the Bankruptcy Court properly considered that factor in determining, in the first instance, whether the Debtor had fraudulent intent at all.

In sum, this Court concludes that, in determining whether the Debtor's false or inaccurate statements were innocent mistakes or intentional lies, the Bankruptcy Court was permitted to consider the Debtor's lack of financial sophistication, among other factors. Accordingly, the Trustee's contention that the

7

Bankruptcy Court erred in this respect is without merit.

V. "KNOWING AND FRAUDULENT INTENT" DETERMINATION UNDER §727(A)(4)

The Trustee also contends that the Bankruptcy Court erred in determining that the Debtor did not have the requisite knowledge and intent under 11 U.S.C. § 727(a)(4)(A) with respect to any false or inaccurate statements the Debtor made in connection with his submissions to the Bankruptcy Court. As discussed below, this Court disagrees and finds that the Bankruptcy Court's determination was not clearly erroneous.[6]

The Bankruptcy Court concluded that the statements were made under oath, that the statements were false, and that the statement related materially to the bankruptcy case.[7] Thus, the central issue was whether the Debtor's financial disclosures were known to be false by the Debtor and made with the intent to deceive.

"Fraudulent intent must be shown by actual, not constructive fraud. The party objecting to the discharge must show that the information was omitted for the specific purpose of perpetrating a fraud and not simply because the debtor was careless or failed to fully understand his attorney's instructions . . . ." *In re Dubrowsky*, 244 B.R. at 571-72 (citations omitted). A Debtor shall be denied a discharge if he is found to have exhibited a "reckless indifference to the truth." *Painewebber Inc. v. Gollomp (In re Gollomp)*, 198 B.R. 433, 438 (S.D.N.Y. 1996) (citing *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 112 (1st Cir. 1987)). The Second Circuit has recognized that fraudulent intent may be inferred from a series of incorrect statements and omissions contained in the schedules. *See In re Dubrowsky,* 244 B.R. at 571-72 ("[I]t is important to note that under section 727(a)(4)(A), a reckless indifference to the truth is sufficient to sustain an action for fraud.") (citations omitted); *Castillo v. Casado (In re Casado)*, 187 B.R. 446, 450 (Bankr. E.D.N.Y. 1995) ("Successful administration of the Bankruptcy Act hangs heavily on the veracity of statements made by the Bankrupt . . . . [R]eckless indifference to the truth . . . is the equivalent of fraud.") (citing *Diorio v. Kreisler-Borg Constr. Co. (In re Diorio)*, 407 F.2d 1330, 1331 (2d Cir. 1969)); *see also Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1583 n.4 (2d Cir. 1983); *Nisselson v. Wolfson (In re Wolfson)*, 139 B.R. 279, 288 (Bankr. S.D.N.Y. 1992), *aff'd*, 152 B.R. 830 (S.D.N.Y. 1993). Moreover, "while subsequent disclosure before an objection to discharge is filed may be some evidence of innocent intent, . . . the effect of a false statement is not cured by correction in a subsequently filed schedule."

---

[6] Even if this Court reviewed this determination under a *de novo* standard of review, it would reach the same determination for the reasons discussed *infra*.

[7] In the Debtor's Response, the Debtor also makes an argument regarding the lack of materiality with respect to the statements at issue. The Trustee argues that the Debtor did not file a notice of cross appeal of the April 18 Memorandum and Order, nor did he file a counter statement of issues to be presented on appeal pursuant to Rule 8006. *See* Fed. R. Bankr. P. 8006; *see also Zimmermann v. Jenkins (In re GGM, P.C.),* 165 F.3d 1026, 1032 (5th Cir. 1999) (holding no preservation of issues on appeal); *Interface Group Nevada, Inc. v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*, 145 F.3d 124, 132-33 (3d Cir. 1998) (same). However, this issue is moot because, as set forth *infra*, the Court rejects the Trustee's arguments on appeal and affirms the Bankruptcy Court's April 18 Memorandum and Order refusing to deny the Debtor's discharge.

8

*Weiss,* 2001 WL 423050, at *3 (citations and quotations omitted).

As set forth below, the Bankruptcy Court did not err in finding that the Debtor did not make the inaccurate statements and omissions with the intent to deceive, or a reckless indifference to the truth. As it regards a question of fact, this determination is reviewed for clear error, with deference given to the Bankruptcy Court's opportunity to judge the credibility of the debtor and any other witnesses. *See U.S. Lines, Inc. v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. (In re U.S. Lines, Inc.)*, 197 F.3d 631, 640-41 (2d Cir. 1999). The Bankruptcy Court fully credited the Debtor's explanations for these misstatements and inaccuracies and there is no basis to disturb that finding. As discussed below, viewing the misstatements individually and collectively, there was ample evidence in the record to support the reasoned conclusion by the Bankruptcy Court.[8] The Court will analyze each of the false statements and omissions independently and then collectively.

1. Statement of Financial Affairs

The Trustee argues on appeal that the Bankruptcy Court erred in finding that the Debtor produced evidence of a credible explanation for the misstatements regarding his income in the Statement of Financial Affairs to satisfy his burden. Specifically, the Trustee contends that the Debtor intended to misrepresent his gross income for years 2004 and 2005, and omitted the year 2003 in its entirety. After reviewing the record, the Court does not find the Bankruptcy Court's determination to be clearly erroneous. The Debtor and his attorney did advance explanations for the misstatements, and the Bankruptcy Court believed that, given the information furnished in the Statement of Financial Affairs and testimony regarding the value of the Debtor's assets and liabilities, the filing was based on the Debtor's personal knowledge and honest belief. (April 18 Memorandum and Opinion, at 4.) In particular, the Bankruptcy Court found that the Debtor's testimony was credible regarding such misstatements. (April 18 Memorandum and Opinion, at 4) ("On the whole, this Court was left with a very clear and distinct impression that the debtor was fully candid and forthright."). The Debtor's explanation, which was credited by the Bankruptcy Court, would support the Bankruptcy Court's conclusion that the false statements were not knowingly and fraudulently made. *See Sanderson v. Ptasinski (In re Ptasinski)*, 290 B.R. 16, 23 (Bankr. W.D.N.Y. 2003) ("[I]f

---

[8] As an initial matter, the Trustee argues that, as part of its "Findings of Fact and Conclusions of Law," the Bankruptcy Court "mischaracterized" certain facts and utilized incorrect numbers from the Debtor's documents. The Trustee contends that these erroneous factual findings contributed to the erroneous conclusion that the Debtor's misstatements on his schedules and Statement of Financial Affairs were not made knowingly or with fraudulent intent. (Trustee's Br. at 6.) For example, the Trustee notes that the Bankruptcy Court refers to the Debtor's gross income for 2004 as $63,806 in the Statement of Financial Affairs, although it was actually listed at $61,000. (*Id.*) The Court has carefully reviewed the full record, including the Debtor's Schedules, Statement of Financial Affairs, and the Debtor's testimony – and there is absolutely no reason to believe that any of these purported inaccuracies in the Bankruptcy Court's April 18 Memorandum and Order had any impact whatsoever on the Court's overall analysis. Instead, as discussed in detail *infra*, the record provides more than ample support for the Bankruptcy Court's determination, and there was no error that would justify setting aside the factual finding by the Bankruptcy Court of the Debtor's lack of fraudulent intent.

items were omitted from the debtor's schedules because of an honest mistake . . . such a false declaration may not be sufficiently knowingly and fraudulently made so as to result in a denial of discharge.").

Furthermore, the Debtor's Statement of Financial Affairs states the Debtor's gross income as $61,000 in 2004, while the Trustee argues that the tax return for 2004 reflected income of $63,842. This error represented a 4% deviation. (Trial Tr. 7:5-11.) In *Dubrowsky*, the court held that the "gross discrepancy . . . coupled with the omission of jointly owned property evidences, at the minimum, a reckless disregard for the truth which has consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A)." 244 B.R. at 575-76 (citing In re Tully, 818 F.2d at 112; *see also MacLeod v. Arcuri (In re Arcuri)*, 116 B.R. 873, 881 (Bankr. S.D.N.Y. 1990) ("[D]e minimis value . . . may tend to vitiate the debtor's fraudulent intent"). Here, however, the Bankruptcy Court did not find such minor discrepancies to support a finding of fraudulent intent and to be enough to deny discharge, even combined with the other omissions discussed *infra*, and there is no basis to disturb that finding.

As for the 2005 filings, the Debtor still contends that the filing was correct. The Debtor's attorney, who also filed the petition, argues that the estimate in the Statement of Financial Affairs reflects a year to date income whereas the final tax returns include overtime pay that the Debtor could not have estimated at the moment he filed the petition. (Trial Tr. 6:23-6-5; Debtor's Resp. Br., at 7.) The Bankruptcy Court found such acknowledgment and argument at trial to be sufficient, and this Court does not find such a determination to be clearly erroneous. Furthermore, the $273.35 discrepancy is of minimal value, especially given that the Debtor was accurate with all other provisions in his schedules, including a total disclosure of $35,532 in personal property and the inclusion of pay stubs containing explicit instructions indicating exactly how the cash flows were calculated for purposes of the schedules. (*See* Exh. 13.)

The Trustee also argues that the Debtor failed to disclose his 2003 gross income on the Statement of Financial Affairs.[9] Even though the Debtor or the Bankruptcy Court did not specifically address this issue, the Bankruptcy Court found overall that the Debtor lacked fraudulent intent with respect to any omissions or misstatements and the Trustee has put forth no evidence regarding the Debtor's failure to disclose his 2003 gross income to suggest anything other than that it was an innocent oversight. Thus, there is no basis to conclude that the Bankruptcy Court's failure to find that such an omission demonstrated fraudulent intent was clearly erroneous.

2. Tax Refunds

The Trustee also argues that the Debtor fraudulently omitted tax refunds earned during the years 2003, 2004 and 2005 as income in the Schedules. Although the Debtor must disclose every asset regardless of the value, *In re Arcuri*, 116 B.R. at 881, the Trustee must show that the information was omitted for the specific purpose of perpetrating a fraud and not due to carelessness. *Zitwer v. Kelly (In re Kelly)*, 135 B.R. 459, 461 (Bankr. S.D.N.Y. 1992).

In addition to the Debtor testifying that he did not disclose the income tax refunds because he believed they were already

---

[9] The Statement of Financial Affairs directs the Debtor to "[s]tate also the gross amounts received during the two years immediately preceding this calendar year." (Exh. 1, at 20.)

10

included in gross income, his counsel argued that (1) there was no place on the petition to list the 2003 and 2004 refunds (*See* Trial Tr. 11:10-12:6), and (2) the Debtor did not include the 2005 refund because that amount was not available to him at the time of filing the petition – that is, he filed the petition in October 2005 and the 2005 tax returns were not completed until the following Spring (Trial Tr. 11:12-11:23).

The Bankruptcy Court credited the Debtor's testimony that he failed to disclose the income tax refunds because he believed they were already included in gross income. Moreover, with respect to the 2003 and 2004 refunds, the Bankruptcy Court noted that the schedules do not provide for a place on the petition to indicate tax refunds for prior years. Thus, the Bankruptcy Court was satisfied that these omissions relating to the tax refunds were not done with fraudulent intent. The Trustee has not produced any evidence or arguments to disturb that finding. *See, e.g., In re Gollomp*, 198 B.R. at 438 (holding no fraudulent intent where creditor did not present any evidence on appeal). In short, the Court concludes that the Bankruptcy Court's factual findings as to lack of fraudulent intent with respect to the tax refunds were not clearly erroneous.

### 3. Schedules I and J

The Trustee further contends that the Debtor fraudulently misrepresented his gross monthly income and expenses on his Schedules I and J. The Debtor testified that he filled out the statements to the best of his knowledge. Evidence during trial indicated that these schedules are only estimates of one moment in time – *i.e.*, the filing date of the petition. (Exh. 13, at 2-3.) The Debtor freely acknowledged such errors during trial and amended his complaint to reflect inaccuracies, and his attorney provided a clear and succinct explanation about how the amounts were calculated for the schedules. (Trial Tr. 17:15-18:19.) Thus, in this case, the Debtor and his attorney thoroughly explained the manner in which such income and expenses were calculated for the schedules. The Bankruptcy Court concluded that the Debtor's explanations were satisfactory, and there is no basis to disturb that determination.

Finally, the Court recognizes that these alleged inaccuracies and misrepresentations should not simply be examined in isolation when determining whether the Debtor acted with fraudulent intent or with reckless indifference to the truth, but rather should also be examined collectively in conjunction with the other evidence before the Bankruptcy Court. Here, even when the statements are considered as a whole in the context of the entire record, there is no basis to conclude that the Bankruptcy Court erred in finding a lack of fraudulent intent. A bankruptcy judge's "intent" determination often relies heavily upon the judge's evaluation of the credibility and demeanor of the debtor. *See, e.g., Essenfeld v. Schultz (In re Schultz)*, 239 B.R. 664, 668 (E.D.N.Y. 1999) ("As the judge hearing the testimony and viewing the witness, Judge Conrad was clearly in the best position to make this type of decision and this Court will not interfere with Judge Conrad's factual conclusions."). Thus, deference is given to the original fact finder because of that court's expertise and superior position to make determinations of credibility. *See, e.g., In re Tully*, 818 F.2d at 109 (citing *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985)). In the instant case, the Bankruptcy Court took into account a variety of factors in exercising his discretion to determine intent, including the credibility and demeanor of the Debtor:

> The Court was struck by the debtor's calm, frank, deliberative, and

unequivocal demeanor and highly credible testimony. He answered all questions put to him and was directly responsive to any questions the trustee, his counsel, or the Court put to him. He did not quibble, hesitate, fudge or hedge his answers. On the whole, this Court was left with a very clear and distinct impression that the debtor was fully candid and forthright.

(April 18 Memorandum and Order, at 4.) The Trustee has not pointed to any evidence in the record that would support finding that the Bankruptcy Court's determination on the issue of intent, including the credibility finding, was erroneous.

In sum, after a careful review of the record and consideration of the Trustee's arguments, this Court concludes that the Bankruptcy Court did not err in finding that the Debtor did not make false statements knowingly and with fraudulent intent and did not err in dismissing the Trustee's complaint.

## VI. Conclusion

For the foregoing reasons, the Court AFFIRMS the April 18 Memorandum and Order of the Bankruptcy Court.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 12, 2008
Central Islip, New York

\* \* \*

The attorney for the Trustee-Appellant Marc A. Pergament, Esq., of Weinberg, Gross & Pergament, LLP, 400 Garden City Plaza, Suite 403, Garden City, New York, 11530. The attorney for the Debtor-Appellee is Kenneth Halpern, Esq., of Sawyer, Halpern & Demetri, 666 Old Country Road #701, Garden City, New York, 11530.